**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR ONE E-MAIL ACCOUNT SERVICED BY MICROSOFT CORPORATION | ML No. _____19-836_____ |

*Reference:*   *DOJ Ref. # CRM-182-67197; Subject Account: li.lo.joe@hotmail.com*

**APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Treaty Between the Government of the United States of America and the Principality of Liechtenstein on Mutual Legal Assistance in Crimnal Matters, Liech.-U.S., S. TREATY DOC. NO. 107-16 (2002) (hereinafter the "Treaty") (hereinafter, the "Treaty"), to execute a request from the Principality of Liechtenstein ("Liechtenstein").  The proposed Order would require Microsoft Corporation ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Redmond, Washington, to disclose certain records and other information pertaining to the PROVIDER account associated with li.lo.joe@hotmail.com, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order.  The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order.  In support of this application, the United States asserts:

**LEGAL BACKGROUND AND JURISDICTION**

1. PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed Order. *See* Treaty art. 5(1). In addition, this Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. 18 U.S.C. § 2703(d). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3. Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1). This application to execute Liechtenstein's request has been duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs,[1] which has authorized execution of the request and has

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

delegated the undersigned to file this application.  The undersigned has reviewed the request and has confirmed that it was submitted by authorities in Liechtenstein in connection with a criminal investigation and/or prosecution.

4.      A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5.      Authorities in Liechtenstein are investigating Ivan Matracchi ("Matracchi") for fraud and money laundering offenses, which occurred from at least May 13, 2014 to December 1, 2014, in violation of the criminal law of Liechtenstein, specifically, Sections 146, 147, 148, 148a, and 165 of the Liechtenstein Criminal Code.  A copy of the applicable laws is appended to this application.  The United States, through the Office of International Affairs, received a request from Liechtenstein to provide the requested records to assist in the criminal investigation and/or prosecution.  Under the Treaty, the United States is obligated to render assistance in response to the request.

6.      According to authorities in Liechtenstein, on May 13, 2014, Matracchi, acting as the owner of a computer parts company called Ivan Global Limited ("Ivan Global"), opened a company bank account in Liechtenstein with the Hong Kong based Valatris Bank ("Valatris").  Valatris assigned Ivan Global an account with the International Bank Account Numbers (IBANs)

LI22 08803103511650001 (USD) and LI49 08803103511650000 (EUR). Authorities in Liechtenstein allege that Matracchi created Ivan Global and opened this account as part of a fraud and money laundering scheme.

7. On November 11, 2014, an unknown suspect hacked into the e-mail account of an employee of the Italian company Perissinotto SPA, Vidodrone ("Perissinotto") and sent an e-mail to the company's business partner instructing that all outstanding invoices be paid to the company's new account held by Valatris in Liechtenstein. In the e-mail, the account name was attributed to Perissinotto, however, the provided IBANs were LI22 08803103511650001 (USD) and LI49 08803103511650000 (EUR), the same IBANs assigned to the account opened by Matracchi for Ivan Global. Later that same day, the suspect sent an additional e-mail to the business partner from Perissinotto's hacked account expressing urgency in receiving the payment. Consequently, the business partner became suspicious of the correspondence and forwarded the e-mails to another employee at Perissinotto.

8. On November 13, 2014, a representative of Perissinotto contacted Valatris to report the attempted fraud. Perissinotto informed the bank that their company's e-mail system had been compromised and provided the IBANs assigned to the bank account managed by Ivan Global.

9. On November 18, 2014, the Dutch company Gerritsen Projects B.V. ("Gerritsen") also reported to Valatris that an unknown person intercepted its e-mails containing business correspondence, attempted to defraud the company by pretending to be its business partner, and sent altered payment instructions using the IBANs LI22 08803103511650001 (USD) and L149 08803103511650000 (EUR).

10. On November 20, 2014, another company, Gilbert Elliot Holdings Limited

("Gilbert Elliot"), reported fraudulent activity to Valatris concerning the same IBANs assigned to the account managed by Ivan Global. Similar to the aforementioned companies, an unknown person had compromised the e-mail system used by Gilbert Elliot or their business partner. This unknown suspect purported to be an employee of their business partner and provided new payment instructions to the IBANs LI22 08803103511650001 (USD) and LI49 08803103511650000 (EUR). Believing that their business partner had sent the e-mail with the new payment instructions, Gilbert Elliot transferred EUR 51,000 (approximately USD 57,241) to the account at Valatris.

11.     Matracchi contacted Valatris in a letter dated December 1, 2014. The letter requested Valatris to transfer the entire credit balance of USD 215,367 from Ivan Global's bank account using IBANs LI22 08803103511650001 (USD) and LI49 08803103511650000 (EUR) to an account held in the name of a company called Dicon Int. Ltd. at the SCSB Bank based in Taiwan. However, Lichtenstein authorities froze the account and prevented the transfer through a court order on December 9, 2014.

12.     Lichtenstein authorities discovered during the investigation that as of November 26, 2014, a total of EUR 126,371.66 (approximately USD 141,858) was deposited into the account. Records obtained from Ivan Global revealed that the company did sell computer components, but on a very small scale. Given the discrepancy between Ivan Global's profits and the total amount deposited into the account, authorities in Liechtenstein allege that the majority of the deposits originated from fraudulent acts corresponding to the above-detailed business e-mail compromise scheme.

13.     Further, Lichtenstein authorities established that the company Dicon Int. Ltd., identified by Matracchi as the transfer recipient for the entire balance of Ivan Global's bank

account at Valatris, does not exist at the provided address and telephone number.

14. Valatris provided records to Lichtenstein authorities indicating that Matracchi opened the account with a certified copy of his passport and with the e-mail address **li.lo.joe@hotmail.com.** However, during police interviews, Matracchi claimed that his passport had previously been stolen and he denied opening the account.

15. In order to further the investigation, Liechtenstein authorities seek certain records pertaining to the e-mail account **li.lo.joe@hotmail.com**, which is serviced by PROVIDER.

## REQUEST FOR ORDER

16. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal prosecution. Specifically, these items will help authorities in Liechtenstein identity of the owner of Ivan Global's bank account at Valatris, locate other individual(s) who are responsible for the criminal activity, and determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By:  _/s/ Jason F. Cunningham_
Jason F. Cunningham
Trial Attorney
MA Bar Number 673495
Office of International Affairs
Criminal Division, Department of Justice

                1301 New York Avenue, N.W., Suite 800
                Washington, D.C.  20530
                (202) 616-3596 telephone
                (202) 514-0080 facsimile
                Jason.Cunningham@usdoj.gov

## **Relevant Provisions of the Liechtenstein Criminal Code**

**Section 146—Fraud**
1. Anyone who by deceit about facts induces another person to act, fail to act, or suffer an act and thus causes a pecuniary loss to that person or a third party with the intention of unlawfully enriching himself or a third party as a result of the deceived person's behavior, shall be punished by up to six months of imprisonment or a fine up to 320 daily rates.

**Section 147—Serious Fraud**
1. Any person committing fraud, who for the purpose of deception:
    (1) uses a false or forged document, false or forged data, another such means of evidence or an incorrect measuring instrument;
    (2) incorrectly places, moves, removes or defaces a sign intended to indicate the boundary or the water level; or
    (3) impersonates a public official, shall be sentenced to a term of imprisonment of up to three years.

2. Any person who commits a fraud which causes a loss in excess of 5,000 Swiss francs shall be liable to the same sentence.

3. Any person causing a loss in excess of 75,000 Swiss francs through the offense shall be sentenced to a term of imprisonment of between one and ten years.

**Section 148—Fraud Committed on a Professional Scale**
1. Any person who commits fraud on a professional scale shall be liable to a term of imprisonment of between six months and five years; however, any person who commits serious fraud with the intention of securing a continuous income by repeatedly committing such fraud shall be liable to a term of imprisonment of between one and ten years.

**Section 148a—Fraudulent Misuse of Data Processing**
1. Any person who, with the intention of unjustly enriching himself or a third party, causes another person a pecuniary loss by influencing the outcome of computer-aided data processing through shaping the program, through the input, modification, deletion or suppression of data or otherwise through affecting the performance of the processing operation, shall be sentenced to a term of imprisonment of up to six months or to pay a fine of up to 360 daily rates.

2. Any person who commits the offense on a commercial basis or who though the offense causes a loss exceeding 5,000 Swiss francs shall be sentenced to a term of imprisonment of up to three years, and any person who through the offense causes a loss exceeding 75,000 Swiss francs shall be sentenced to a term of imprisonment of between one and ten years.

**Section 165—Money Laundering**
1. Any person who conceals or veils the origin of, asset components originating from a crime, a misdemeanor under §§ 223, 224, 278, 278d or §§ 304 to 309, a misdemeanor under Art. 83 to 85 of the Aliens Act, a misdemeanor under the Narcotics Act, a misdemeanor under Art. 140 of the Tax Act, a misdemeanor under Art. 88 or 89 of the Value-Added Tax Act or a violation pursuant

to Art. 24 of the Market Abuse Act, in particular by providing false information in legal transactions concerning the origin or the true nature or the ownership of or other rights pertaining to, the power of disposal over, the transfer of, or concerning the location of such asset components, shall be punished with imprisonment of up to three years or a fine of up to 360 daily rates.

2. Any person who appropriates asset components originating from a crime, a misdemeanor under §§ 223, 224, 278, 278d or §§ 304 to 309, a misdemeanor under Art. 83 to 85 of the Aliens Act, a misdemeanor under the Narcotics Act, a misdemeanor under Art. 140 of the Tax Act, a misdemeanor under Art. 88 or 89 of the Value-Added Tax Act or a violation pursuant to Art. 24 of the Market Abuse Act or who knowingly appropriates or takes into safekeeping asset components originating from a misdemeanor under Art. 140 of the Tax Act whether with the intention merely to hold them in safekeeping, to invest them, or to manage them, or who converts, realizes, or transfers to a third party such asset components, shall be punished with imprisonment of up to two years or a fine of up to 360 daily rates.

3. Any person who commits the offense pursuant to paragraph 1 or 2 with respect to a value exceeding 75,000 francs or as a member of a criminal group that has joined together for the purpose of continued money laundering shall be punished with imprisonment of six months up to five years.

4. An asset component shall be deemed to originate from a punishable act if the perpetrator of the punishable act has obtained the asset component through the offense or received it for its commission or if the value of the originally obtained or received asset value is embodied therein.

…

6. Anyone who appropriates or takes into safekeeping asset components of a criminal organization (§ 278a) or a terrorist group (§ 278b) on behalf of or in the interest of such a criminal organization or terrorist group, whether with the intention merely to hold them in safekeeping, to invest them or to manage them, or who converts, realizes or transfers such asset components to a third party, shall be punished with imprisonment of up to three years; anyone who commits the offense with respect to a value exceeding 75,000 francs shall be punished with imprisonment of six months to five years.